IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHNSON CARTER,

    Plaintiff,

v.

CARLA GRIGGS,

    Defendant.

OPINION & ORDER

16-cv-252-wmc

---

*Pro se* plaintiff Johnson Carter claims that defendant Carla Griggs violated his rights under the Eighth and First Amendments by failing to treat a collarbone injury while he was incarcerated at Jackson Correctional Institution ("JCI") in retaliation for writing to a senator about his dissatisfaction with the medical care there.[1] Currently before the court are plaintiff's constructive motion to amend (dkt. #22), defendants' motion for partial summary judgment, seeking dismissal of his First Amendment claim on exhaustion grounds (dkt. #27), and plaintiff's motion to deny defendants' motion for summary judgment (dkt. #34). For the following reasons, plaintiff will be permitted to proceed on his amended complaint in part, and defendant's motion for partial summary judgment will be granted.

OPINION

I.     **Proposed Amended Complaint (dkt. #22)**

Carter has already filed one amended complaint in this lawsuit, and must seek leave of court to amend his complaint for a second time. *See* Fed. R. Civ. P. 15(a) (providing

---

[1] Originally, plaintiff named "Jane Doe" as the defendant, but the defendant has subsequently been identified as Carla Griggs, who was a nurse at JCI, as reflected in the revised case caption.

that a party may amend its pleading once as a matter of course within 21 days of service or 21 days of a responsive pleading or Rule 12 motion). Although Carter has not explained why he failed to include these additional defendants and allegations in either in his original or amended complaint, the court will grant his effective motion to amend and screen it pursuant to 28 U.S.C. § 1915A to determine whether any portion is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

Carter's proposed amended complaint includes additional, alleged facts as to Griggs' personal involvement in his medical requests for a shoulder injury in May of 2013. In particular, Carter attaches documents related to his requests for care and Griggs' responses to them, alleging that although he complained of pain, Griggs provided no pain medication, only gave him Tylenol or ibuprofen, or told him he had to wait to see a doctor. Carter also seeks leave to proceed against Griggs on a theory of medical malpractice, which the court will permit because his allegations that Griggs ignored his complaints of pain and failed to provide him with proper medical care are sufficient to permit an inference of negligence under Wisconsin law. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. Accordingly, Carter may proceed against Griggs on his Eighth Amendment and related state law malpractice claims as alleged in his most recently amended complaint.

However, Carter may not proceed against any additional defendants. While Carter now seeks to add Mobilex USA, Dr. Reono Bertagnolli, Debra Tidquist "and their insurance co." as defendants (dkt. #22, at 3), he does not include any specific allegations

about these defendants. Instead, Carter attaches a December 4, 2013, one-page radiology report, which appears to contain each of their names. (*See* dkt. #22-1.) In the report, signed electronically by Dr. Bertagnolli, there is a note that the "[a]cromioclavicular joint has degenerative changes," but that he did not see a shoulder fracture. (Dkt. #22-1.) Tidquist is listed as the physician on that record, but she did not include any notes, and Carter has not alleged that Tidquist is otherwise involved in his treatment in any fashion. Similarly, Mobilex USA is the company listed on the radiology report. Finally, without any detail or justification, Carter wishes to add Bertagnolli's and Tidquist's insurer's as defendants.

Carter has not alleged sufficient facts to permit an inference of deliberate indifference or negligence as to any of these new defendants. While he appears to include them because they were somehow involved in his care, Carter does not include any allegations of improper medical care by any of these new defendants. Even the February 1, 2016, x-ray report from Good Samaritan Health Care includes no more than an impression by another doctor of "what is likely a remote right acromioclavicular separation." (Dkt. #22-2, at 1.) That note does not, however, support any reasonable inference that Dr. Bertagnolli was actually deliberately indifferent. Rather, Bertagnolli's notes described degenerative changes in the joint, which indicates that his diagnosis was consistent with the 2016 x-ray impression. As such, even at the screening stage, Carter has not alleged facts that would permit an inference of deliberate indifference as to Dr. Bertagnolli or any of the other proposed, additional defendants. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (a inference of deliberate indifference arises when a "decision

[is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment").

II. **Motion for Partial Summary Judgment**

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the [jail's] administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of these requirements is to give the jail administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to exhaust his administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that Carter failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

To exhaust state administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code ch. DOC 310. Under these provisions, prisoners start the complaint process by filing an inmate

4

complaint with the institution complaint examiner within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). The complaint must "[c]ontain only one issue per complaint, and shall clearly identify the issue." *Id.* § 310.09(e).

If the institution complaint examiner rejects a grievance for procedural reasons without addressing the merits, an inmate may appeal the rejection. *Id.* § 310.11(6). If the complaint is not rejected, the institution examiner makes a recommendation on the complaint to the reviewing authority. *Id.* § 310.11(6). The offender complaint is then decided by the appropriate reviewing authority whose decision can be appealed by the inmate to the correctional complaint examiner (corrections examiner). *Id.* §§ 310.12, 310.13. The corrections examiner then makes a recommendation to the Secretary of the Department of Corrections, who takes final action. *Id.* §§ 310.13, 310.14.

Jodi Dougherty, the JCI inmate complaint examiner, has reviewed the ICRS database for all of the complaints Carter filed. Dougherty located a complaint Carter filed on November 7, 2013, JCI-2013-21586, in which Carter claimed that he did not receive adequate medical treatment after he injured his collarbone in May of 2013. Specifically, Carter complained that: the nurses told him he did not break his shoulder when he went to the Health Services Unit ("HSU"); they did not give him a work restriction for his shoulder pain; and as of November 7, he still had not seen a doctor for his pain. (Dkt. #29-3, at 10.) Carter did not, however, include any allegations suggesting anyone in the HSU (much less Nurse Griggs) denied him care *in retaliation* for complaining to a senator about his medical care. Moreover, Dougherty was unable to locate any inmate complaint

5

in which Carter alleged that someone at JCI retaliated against him.

For his part, Carter admits that he did not file an inmate complaint about his First Amendment claim. Instead, he claims that: (1) the PLRA does not apply to him because when he learned that his collarbone was broken, he was not in prison; and (2) the health care officials intimidated him in an effort to stop him from exhausting his First Amendment claim. However, neither argument saves his First Amendment claim.

*First,* Carter's claim that he learned his collarbone was broken only after being released from JCI is unavailing since the PLRA's exhaustion requirement applies to plaintiffs who are incarcerated at the time that they filed their lawsuit. *See Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004) ("[T]he status of the plaintiff at the time he brings his suit" determines whether the plaintiff is a prisoner subject to the PLRA's exhaustion requirements). Because Carter does not dispute that he *was* incarcerated when he filed his original complaint in this case, *and* he is currently incarcerated at the Oshkosh Correctional Institution, the PLRA's exhaustion requirement attaches to his retaliation claim against Griggs.

*Second,* Carter's claim that he "was intimidated" by Griggs, because she told him that his collar bone was not broken, has slightly more traction. Prisoners are only required to comply with those grievance procedures that are "available." 42 U.S.C. § 1997e(a). "An administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey v. Conley*, 663 F.3d 899, 906 (7th

6

Cir. 2011). *See also Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (grievance process "unavailable" if "prison administrators thwart inmates from taking advantage of a grievance process through machination, *misrepresentation*, or intimidation") (emphasis added). Thus, if health care officials intimidated Carter into not filing a complaint related to his First Amendment claim, he did not need to exhaust his administrative remedies.

However, Carter does not allege that Griggs' intimidation was related to his ability to file a grievance. Instead, Carter states that Griggs intimidated him when she told him his collarbone was not seriously injured. More specifically, Carter does not claim that Griggs did or said anything to him related to his ability to file a complaint about the medical care she provided or did not provide. Thus, there is no evidence that anyone at JCI created a barrier to him filing a complaint. In fact, had he submitted evidence that Griggs or any other official at Jackson actually said something to him *specifically related to his right or ability to file a complaint*, he would have had a better argument that the grievance system was not available to him. Evidence in the record is to the contrary, since Carter affirmatively complained about HSU nurses medical care decisions in JCI-2013-21586 on November 7, 2013, which implicated *Griggs*. More broadly, defendants submitted Carter's inmate complaint history report, which reveals that Carter has filed *16* other JCI complaints about a variety of different issues beyond JCI-2013-21586, including his medical care, employment at Jackson, and alleged loss of personal property. As such, there is *no* evidence, direct or circumstantial, supporting an inference that anyone at JCI impeded Carter's ability to file a grievance related to his retaliation claim against Griggs.

7

ORDER

IT IS ORDERED that:

1. Plaintiff Johnson Carter's proposed amended complaint (dkt. #22) is GRANTED IN PART AND DENIED IN PART. Specifically, plaintiff is GRANTED leave to proceed against Griggs on a Wisconsin state law claim of negligence only and DENIED leave to proceed against defendants Mobilex USA, Dr. Reono Bertagnolli, Debra Tidquist "and their insurance co.," who are dismissed.

2. Defendant's Motion for Partial Summary Judgment (dkt. #27) is GRANTED. Carter's First Amendment claim in this lawsuit is DISMISSED WITHOUT PREJUDICE.

Entered this 25th day of October, 2017.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge