# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHNSON CARTER,

                Plaintiff,

    v.

CARLA GRIGGS,

                Defendants.

ORDER

16-cv-252-wmc

---

Plaintiff Johnson Carter is proceeding in this civil action on Eighth Amendment and Wisconsin negligence claims against defendant Carla Griggs for her alleged failure to treat plaintiff's collarbone and shoulder injury in May of 2013 when he was incarcerated at Jackson Correctional Institution. The court recruited counsel for Carter, and on November 21, 2018, Magistrate Judge Stephen Crocker held a pretrial conference, resetting the trial for November 4, 2019, with pretrial filings due September 27, 2019. On May 10, 2019, Carter filed a motion to amend his complaint to add Dr. Wayne Bradford Martin as a defendant, since Dr. Martin was involved in Carter's care for his injury starting in November of 2013. (Dkt. #80.) Defendant opposes the motion and has recently notified the court, pursuant to Federal Rule of Civil Procedure 25, that Dr. Martin passed away on July 19, 2019. The court is denying that motion because adding Dr. Martin as a defendant at this stage would unduly prejudice defendant, and, in any event, the amendment would be futile since Carter did not exhaust his administrative remedies with respect to his proposed claim against Dr. Martin.

## PROPOSED ALLEGATIONS

Plaintiff now seeks to proceed on a claim against Dr. Martin based on the following allegations. On November 29, 2013, Dr. Martin examined plaintiff and determined that Carter had a first-degree shoulder separation. That day, Dr. Martin ordered an x-ray of Carter's right shoulder but did not order an activity or work restriction. After Carter's x-ray, Dr. Martin examined him again on December 10, 2013. Dr. Martin noted the shoulder separation again, recommending that Carter see a physical therapist to improve the range of motion of his right shoulder. However, Dr. Martin did not prescribe any additional pain medications, nor did he order an activity restriction. On January 22, 2014, Dr. Martin examined Carter again. At this point, Carter reported that there was no progress with his shoulder and asked if he could be seen for an orthopedic evaluation.

## OPINION

Under Federal Rule of Civil Procedure 15(a)(2), the court "should freely give leave when justice so requires." *Id.* "Leave to amend pleadings is left to the sound discretion of the district court." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001). The court may deny leave to amend where there has been "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015). Neither party suggests that plaintiff's motion was brought in bad faith or with any dilatory motive. On the contrary, it appears that plaintiff filed the motion to amend on May 10, 2019, promptly following Dr. Martin's deposition. Nonetheless, defendant

opposes the addition of a claim against Dr. Martin, arguing that she will suffer undue prejudice and the amendment would be futile.

## I. Undue Prejudice

In determining whether an amendment causes undue prejudice, the court considers whether an amendment would "substantially alter the course of trial or effectively deny [the opponent] the opportunity (and certainly the reason) to take discovery." *See CMFG Life Ins. Co. v. RBS, Sec. Inc.*, 799 F.3d 729, 750 (7th Cir. 2015). Plaintiff's position is that defendant will not be prejudiced by adding Dr. Martin as a defendant since (1) there are no new legal theories, (2) no additional discovery is necessary and (3) plaintiff does not intend to ask for an extension of any of the trial deadlines. Defendant disagrees with plaintiff's second and third points, arguing that the amendment would be unduly prejudicial because it would cause defendants to re-depose Carter then file a motion for summary judgment, making the November 2019 trial unfeasible.

Defendant has a persuasive point; adding Dr. Martin as a defendant will substantially change the scope of this lawsuit and require defendant to incur additional cost. While Carter's treatment record is already established, defendant's focus at summary judgment related to *Griggs'* decisions as a nurse between May and November of 2013. Dr. Martin's addition at this point would require the court to allow additional discovery related to his decision-making process, related to a different set of facts, which would include allowing defendant to re-depose Carter and allowing Dr. Martin's estate to move for summary judgment. Indeed, Griggs' interactions with Carter were different than Dr. Martin's interactions: his claim against Griggs claim relates to her decisions in May 2013,

and the Dr. Martin timeline starts in November 29, 2013.  Thus, defendant would seek to conduct discovery related to Carter's subsequent treatment for his shoulder, which would include evidence from Dr. Duelleman, an orthopedic specialist that treated Carter after Dr. Martin.  In short, adding a claim against Dr. Martin now would require defendant to incur substantial expense, and the time it would take to conduct discovery and pursue summary judgment would make the November trial untenable.  While the court understands that plaintiff's counsel was recruited late in this case and appreciates how quickly efforts were made to seek leave to add Dr. Martin as a defendant, defendant undoubtedly would be prejudiced by the delays necessary to allowing plaintiff to litigate this claim against Martin.

## II.     Futility

More problematic for plaintiff is that a claim against Dr. Martin would not survive a motion for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies with respect to this claim, rendering the addition of Dr. Martin futile.  The parties have submitted what appears to be the undisputed record of plaintiff's purported efforts to exhaust his proposed claim against Dr. Martin.  Having reviewed those materials, the court finds that defendants would be able to prove that plaintiff failed to exhaust a deliberate indifference/medical negligence claim against Dr. Martin.  Accordingly, without delving into whether plaintiff's claim against Dr. Martin would fail on the merits at the summary judgment phase (which would be premature on this undeveloped record), the court concludes that the amendment would be futile, due to plaintiff's failure to exhaust this claim.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and "applies to all inmate suits," *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford*, 548 U.S. at 88–89.

In Wisconsin, the administrative code sets out the process for a prisoner to file a grievance and appeal an adverse decision. Wis. Admin. Code. §§ DOC 310.07–13 (prisoner first files grievance with inmate complaint examiner; prisoner may appeal adverse decision to corrections complaint examiner and then to department secretary). A failure to follow these rules may require dismissal of the prisoner's case. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). But a failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendants. *Jones v. Bock*, 549 U.S. 199 (2007).

In determining whether the content of a grievance is sufficient to exhaust a claim, the prison's rules provide the relevant standard. *Id.* at 218 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Wisconsin's policies require inmate complaints to "contain sufficient information for the department to investigate and decide the complaint." Wis. Admin. Code § DOC 310.07(6). The Court of Appeals for the Seventh Circuit has adopted a similar rule, that an inmate complaint "must contain the sort of information that the administrative system requires.'" *Keller v. Rasmussen*, 90 F. App'x 949, 951 (7th Cir. 2004) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Relevant here, "[t]he Wisconsin prison regulations limit a complaint to 'only one issue' and require that the inmate 'clearly identify the issue.'" *Id.* (citing Wis. Admin. Code § DOC 310.09(1)(e)). However, inmate complaints need not state "facts, articulate legal theories, or demand particular relief," nor must a prisoner name each potential defendant, so long as the grievance "object[s] intelligibly to some asserted shortcoming." *Strong*, 297 F.3d at 650; *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Here, while Carter exhausted his claim against Griggs, the record submitted by the parties indicates that he did not follow the exhaustion procedures with respect to his proposed claim against Dr. Martin. Carter submitted the record of the inmate complaint and appeal that he claims served to exhaust his administrative remedies as to Dr. Martin, JCI-2013-21586. (Pl. Ex. D (dkt. #82-4.) Those records show that Carter submitted that complaint on November 7, 2013, writing that he broke his collarbone and informed Health Services Unit ("HSU") staff that he wanted x-rays and to see a doctor, but that the nurses

told him that he did not break his shoulder, he did not need x-rays and the doctor was not there. Carter repeated several times in the complaint that he wanted to see a doctor, given that it had been six months since his accident and he was still in pain and his collarbone healed wrongly, resulting in a knot on his shoulder. (*Id.* at DOC0059-60.) The delay was the *only* issue he raised in JCI-2013-21586, and the basis for ICE's dismissal of the complaint was that Carter was scheduled to be seen on November 29, 2013. (*Id.* at DOC0052.)

Carter submitted an appeal of that decision on December 4, 2013, writing with respect to his treatment post-November 29, 2013, that he was not allowed a work restriction and had to work with one hand in extreme pain; he had been in pain continually for the past six months and had given up on the notion that the HSU would help him; and that he wanted surgery to fix his shoulder. (*Id.* at DOC0065.) The Corrections Complaint Examiner ("CCE") summarized Carter's appeal as a complaint that "he broke his collar bone and kept requesting to see the doctor and never got scheduled." (*Id* at DOC 0053.) On January 10, 2014, Carter's appeal was dismissed since he had not raised any issues warranting reversal of the decision dismissing the complaint because he was scheduled to be seen.

The CCE's decision addressed the sole issue Carter raised in his original complaint: the delay between when he first sought treatment and when Dr. Martin finally saw him. While the delay and Dr. Martin's treatment are related in that both issues were part of Carter's care for his shoulder injury, Carter's appeal brought new facts into the proceeding that the ICE was unable to address in November of 2013, when investigating the

7

allegations of Carter's inmate complaint. Regardless, even if those new allegations complaining about Dr. Martin's treatment decisions were properly before prison administrators, Wis. Admin. Code § DOC 310.07(5) limits each inmate complaint to *one* issue. In the case of JCI-2013-21586, that one issue was the delay in being seen by a doctor, not the doctor's eventual approach to his care. Based on the record submitted, if the court were to grant plaintiff's motion, that defendant would be able to establish that the institution did not have an adequate opportunity to address Carter's issue with Dr. Martin's treatment.

Accordingly, since it appears that defendants would succeed in pursuing a motion for summary judgment on exhaustion grounds, allowing Carter to amend his complaint at this stage would prove futile. For that reason, and because the court is persuaded that defendant will be unnecessarily prejudiced by further delays caused by the addition of Dr. Martin as a defendant, Carter's motion will be denied.

## ORDER

IT IS ORDERED that plaintiff Johnson Carter's motion to amend (dkt. #80) is DENIED.

Entered this 5th day of September, 2019.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge